# EXHIBIT 10

🅐 Neutral
As of: June 17, 2016 1:18 PM EDT

# *Anderson v. North Roanoke Veterinary Clinic*

United States District Court for the Western District of Virginia, Roanoke Division

January 17, 1997, Decided ; January 17, 1997, FILED, ENTERED

Civil Action No. 96-0250-R

**Reporter**
1997 U.S. Dist. LEXIS 1336

ROBIN L. ANDERSON and ANGELA STAR HALL, Plaintiffs, v. NORTH ROANOKE VETERINARY CLINIC, INC., d.b.a. North Roanoke Veterinary Hospital, and SHARON P. COLEMAN, D.V.M., Defendants.

**Disposition:** [*1] Plaintiffs' motion for partial summary judgment GRANTED in part and DENIED in part.

## Core Terms

overtime, clinic, liquidated damages, parties, defendants', attorneys', unpaid, weekly, per hour, employees, damages, overtime compensation, regular rate, good faith, work hours, requirements, calculated, exemption, biweekly, salary, partial summary judgment, hours worked, plaintiffs', provisions, irregular, number of hours, fluctuating, deposition, payroll, manual

## Case Summary

### Procedural Posture

When plaintiff former employees brought an action against defendant former employers for declaratory and monetary relief for alleged violations of the Fair Labor Standards Act's overtime provisions, *29 U.S.C.S. § 201 et seq.*, the employees filed a joint motion for partial summary judgment.

### Overview

The employees brought an action for declaratory and monetary relief for alleged violations of the Fair Labor Standards Act's overtime provisions, *29 U.S.C.S. § 201 et seq.* The employees filed a joint motion for partial summary judgment. The court held the following: (1) § *207(a)* of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.* stated that no employer was to employ any employee who was engaged in commerce for a workweek longer than 40 hours unless the employee received 1 1/2 times the regular pay rate for overtime work, *29 U.S.C.S. § 207(a)(1)*; (2) the statute provided an exception to the requirement for an employee who was employed pursuant to a bona fide individual contract, or Belo contract, *29 U.S.C.S. § 207(a)(1)*; (3) there was no Belo contract with respect to either of the employees; and (4) where an employer failed to keep records that accurately reflected all daily and weekly hours worked, an employee could come forth with evidence to show hours worked as a matter of just and reasonable inference.

### Outcome

The court granted the motion for partial summary judgment as to the employers' liability for unpaid overtime compensation and attorneys' fees and denied the motion for partial summary judgment as to the employers' liability for liquidated damages.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Legal Entitlement

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

Evidence > Inferences & Presumptions > Inferences

Evidence > Inferences & Presumptions > Presumptions

***HN1*** Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed.

Case: 1:15-cv-07009 Document #: 37-11 Filed: 06/17/16 Page 3 of 12 PageID #:372

Page 2 of 11
1997 U.S. Dist. LEXIS 1336, *1

There is a genuine issue of fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods
>
> Labor & Employment Law > Wage & Hour Laws > Defenses > General Overview

**HN2** Section 207(a) of the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. states that no employer shall employ any employee who is engaged in commerce for a workweek longer than 40 hours unless the employee receives 1 1/2 times the regular pay rate for overtime work. 29 U.S.C.S. § 207(a)(1). The statute provides an exception to this requirement for an employee who is employed pursuant to a bona fide individual contract, or "Belo contract," 29 U.S.C.S. § 207(a)(1).

> Evidence > Burdens of Proof > Allocation
>
> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

**HN3** In order for a valid Belo contract to be an exemption from the overtime pay requirement of the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. the employer has the burden of proof to show by clear and convincing evidence all of the following elements: (1) The employee is employed pursuant to a bona fide individual contract. The employee must agree to the method of compensation in advance of performing the work. The contract must be made in good faith. (2) The duties of the employee necessitate irregular hours of work. Neither the employee nor employer can either control or anticipate with any degree of certainty the number of hours the employee must work from week to week. There must be significant variations in the employee's weekly hours of work, including fluctuation in both the non-overtime and overtime ranges. (3) The contract specifies a regular rate of pay. The contract must specify a regular rate of pay which is greater than the minimum wage for hours up to 40, and the employer must compensate at 1 1/2 times the regular rate for hours over 40. The regular rate includes all remuneration for employment. (4) The contract provides a weekly pay guarantee. The contract must provide a weekly pay guarantee for not more than 60 hours. A guarantee of monthly, semimonthly, or biweekly pay does not qualify. 29 U.S.C.S. § 207(f); 29 C.F.R. §§ 778.403 - 778.408 (1996).

> Evidence > Inferences & Presumptions > Presumptions

> Evidence > Burdens of Proof > Allocation
>
> Evidence > Burdens of Proof > Clear & Convincing Proof
>
> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods
>
> Labor & Employment Law > Wage & Hour Laws > Defenses > General Overview

**HN4** Employers must prove exemptions to the overtime requirement of the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. by clear and convincing evidence. There is a strong presumption that employees are not exempt.

> Evidence > Inferences & Presumptions > Inferences
>
> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

**HN5** Where an employer fails to keep records that accurately reflect all daily and weekly hours worked, an employee may come forth with evidence to show hours worked as a matter of "just and reasonable inference."

> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

**HN6** It is a longstanding rule under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq. that offsets of errors for underpayments in overtime with errors for overpayments in overtime cannot be made. An employer can not claim payment in excess of requirements in one week as a credit against payment in other weeks which did not equal statutory requirements. Payments to employees, such as profit-sharing payments, do not qualify as extra compensation creditable toward overtime compensation payable under the FLSA.

> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods
>
> Labor & Employment Law > ... > Remedies > Damages > Backpay
>
> Labor & Employment Law > ... > Remedies > Damages > Liquidated Damages

**HN7** See 29 U.S.C.S. § 216(b).

> Evidence > Inferences & Presumptions > Inferences
>
> Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods
>
> Labor & Employment Law > ... > Remedies > Damages > Liquidated Damages

**HN8** An employee's right to recover liquidated damages for an employer's failure to pay overtime compensation has been modified in the Portal-to-Portal Act. *29 U.S.C.S. § 260*. This has provided that the right to recover all or a portion of liquidated damages is within the district court's discretion if the employer proves both of the following elements to the satisfaction of the Court: (1) The "act or omission giving rise to such action was in good faith, *29 U.S.C.S. § 260*. This is a subjective test. The court should consider whether the employer "innocently believed" its action was not a violation of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq. (2)* The employer had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. *29 U.S.C.S. § 260*. This is the "objective prong" of the test. Other cases have made it clear that an employer may not simply remain blissfully ignorant of FLSA requirements. Once the Department of Labor expresses an opinion on the legitimacy of an issue, an employer can no longer act to the contrary in good faith. There is a strong presumption in favor of doubling; the burden is on the employer to prove that single damages should be awarded.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees
>
> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards
>
> Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

**HN9** *Section 216(b)* of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.* entitles a prevailing plaintiff to receive a reasonable attorney's fee and costs of the action. *29 U.S.C.S. § 216(b)*.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN10** Case law has set forth the facts and circumstances to be considered in determining the amount of reasonable attorneys' fees. These include:(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fee awards in similar cases.

**Counsel:** For ROBIN L. ANDERSON, plaintiff: Sarah Elizabeth Powell, GLENN, FLIPPIN, FELDMANN & DARBY, ROANOKE, VA. Paul Graham Beers, GLENN, FLIPPIN, FELDMAN AND DARBY, ROANOKE, VA. For ANGELA STAR HALL, plaintiff: Paul Graham Beers, (See above).

For NORTH ROANOKE VETERINARY CLINIC, INC. dba North Roanoke Veterinary Hospital, defendant: William Howard Sapp, Jr., ROANOKE, VA. For SHARON P. COLEMAN, D.V.M., defendant: William Howard Sapp, Jr., (See above).

**Judges:** By: Jackson L. Kiser, Chief United States District Judge

**Opinion by:** Jackson L. Kiser

## Opinion

MEMORANDUM OPINION

By: Jackson L. Kiser

Chief United States District Judge

Plaintiffs Robin L. Anderson and Angela Star Hall are former employees of defendants North Roanoke Veterinary Clinic ("the clinic") and Sharon Coleman, the president and majority shareholder of the clinic. Plaintiffs seek declaratory and monetary relief for alleged violations of the Fair Labor Standards Act's ("FLSA's") overtime provisions, see *29 U.S.C. § 201 et seq.*, and they seek damages for constructive discharge, retaliation, and lack of notice of termination under the FLSA [*2] and Virginia law. The defendants have stipulated that the plaintiffs were, at all times of their employment, non-exempt employees under the FLSA. The plaintiffs have filed a joint motion for partial summary judgment, seeking the Court's decision on three questions of law that relate to liability under the FLSA claim (Count I of the second amended complaint).

The parties have fully briefed the issues involved and have presented oral argument. The motions are, therefore, ripe for disposition. For the reasons contained

Case: 1:15-cv-07009 Document #: 37-11 Filed: 06/17/16 Page 5 of 12 PageID #:374

Page 4 of 11
1997 U.S. Dist. LEXIS 1336, *2

herein, I am of the opinion that the plaintiffs' motion for partial summary judgment should be GRANTED as to the defendants' liability for unpaid overtime compensation and attorneys' fees and DENIED as to the defendants' liability for liquidated damages. The availability of liquidated damages and the amounts of compensatory damages, attorneys' fees, and liquidated damages (if awarded) payable to the plaintiffs will be determined at the trial of this matter.

## I. FACTS

The uncontradicted facts follow:

Anderson was employed by the clinic as an animal groomer between April 1994 and January 5, 1996. Hall was a veterinary assistant from March 1, 1993, to June 18, [*3] 1996. When the plaintiffs were not performing these duties, they provided general assistance at the clinic.

The defendants, referring to Coleman's notes on the back of Anderson's employment application, claim Anderson was paid the following:

> 4/4/94 - 10/6/94 $ 5.50 per hour plus $ 3.00 per clip costing $ 21 - $ 30 plus $ 5.00 per clip costing over $ 31.00
>
> 10/6/94 - 4/5/95 $ 6.00 per hour plus same incentives
>
> 4/5/95 - 6/26/95 $ 6.50 per hour plus same incentives
>
> 6/26/95 - 12/28/95 Coleman's notes state: $ 15,000 salary plus 10 percent of grooming revenues (average 42 hours/week); based on $ 6.50; "6 hr O.T. rate"; $ 576.92 every two weeks + incentive (10% grooming revenues). The defendants claim this is a guaranteed hours contract for $ 6.50 per hour for 39 hours plus $ 9.75 per hour for 3 hours plus 10 percent of grooming revenues; this weekly rate was multiplied by 52 and rounded up to $ 15,000 per year and divided by 26 to determine biweekly pay.
>
> 12/28/95 - 1/5/96 $ 6.50 per hour plus incentive. Coleman's notes state: "12-28-95 Employee not working normal schedule repeatedly. Will need to pay by the hours actually worked. . . . 1-5-96 Employee terminated [*4] employment."

The defendants claim Hall was paid the following:

> 3/29/93 - 3/31/94 $ 6.25 per hour with health insurance starting 10/1/93
>
> 3/31/94 - 4/6/95 $ 6.75 per hour with health insurance
>
> 4/6/95 - 6/12/95 $ 7.00 per hour with "Incentive $ 50 dentistry, feLV/FIV, radiographs"
>
> 6/12/95 - 4/16/96 "Salary $ 17,000 over 44 hr/week (8 hr O.T. rate); Still $ 7.00/hr; $ 653.85 per check before taxes." The defendants claim this is a guaranteed hours contract for $ 7.00 per hour for 40 hours plus $ 10.50 per hour for 4 hours; this weekly rate was multiplied by 52 and rounded up to $ 17,000 per year and divided by 26 to determine biweekly pay.
>
> 4/16/96 - 6/18/96 Guaranteed hours eliminated. Switched to $ 7.25 per hour plus retirement benefits; "see schedule dated 4-16-96"

Plaintiffs agree they were hourly wage earners until June 1995. In early 1995, the plaintiffs consulted the labor board about the clinic's overtime compensation policies. They questioned the clinic's longstanding practices of calculating time on a biweekly period and paying overtime only for over 84 hours of work in a two-week period. The employees confronted Coleman with their discovery [*5] that these practices violated the FLSA.

In June 1995, the clinic placed Anderson and Hall on a straight salary, with additional incentive pay for Anderson equal to ten percent of each dog she groomed. After this time, Anderson and Hall were required to work on a fixed schedule, which the plaintiffs allege required more than 40 hours of work per week on a regular basis. The plaintiffs contend that Coleman computed their fixed salary so it would cover an average of 44 hours/week for Hall and 42 hours/week for Anderson.

The defendants claim Anderson resigned without notice.

On March 8, 1996, Anderson filed the complaint in this action. The complaint was amended twice to add claims and to add Hall as a named plaintiff. The second amended complaint, the operative pleading in this action, makes the following claims:

> Count I Violation of the FLSA overtime provisions;
>
> Count II Discharge of Anderson without reasonable notice in violation of Virginia common law;

Count III Retaliation against Hall for her deposition testimony in violation of the FLSA's retaliation provisions;

Count IV Constructive discharge of Hall for her deposition testimony in violation of the FLSA; [*6] and

Count V Constructive discharge of Hall for her deposition testimony in violation of Virginia public policy.

The plaintiffs' motion for partial summary judgment, filed on October 16, 1996, asserts that no genuine issue of material fact exists as to the defendants' liability under Count I. The motion seeks the Court's decision on three questions of law that relate to liability under Count I. They are:

(1) Whether the defendants are liable to the plaintiffs for any unpaid overtime compensation under the FLSA;

(2) Whether, assuming the defendants are liable for unpaid overtime compensation, the plaintiffs' recoverable damages are limited by the fluctuating workweek provisions of the FLSA; and

(3) Whether, assuming the defendants are liable for unpaid overtime compensation, the plaintiffs are entitled to recover liquidated damages, attorneys' fees, and costs under the FLSA.

The plaintiffs request that the Court reserve for trial the question of the precise amount of damages that they may recover.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

**HN1** Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving [*7] party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)* (citations omitted), *cert. denied, 115 S. Ct. 68 (1994)*. There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

### B. DEFENDANTS' LIABILITY FOR UNPAID OVERTIME COMPENSATION

**HN2** *Section 207(a)* of the FLSA states that no employer shall employ any employee who is engaged in commerce for a workweek longer than forty hours unless the employee receives 1 1/2 [*8] times the regular pay rate for overtime work. See *29 U.S.C. § 207(a)(1)*. The statute provides an exception to this requirement for an employee who is employed pursuant to a bona fide individual contract, or "Belo contract." *See id.* at *§ 207(f)*; *see also Walling v. A. H. Belo Co., 316 U.S. 624, 86 L. Ed. 1716, 62 S. Ct. 1223 (1942)*. **HN3** In order for a valid Belo contract to constitute an exemption from the FLSA's overtime pay requirement, the employer has the burden of proof to show by clear and convincing evidence all of the following elements:

(1) The employee is employed pursuant to a bona fide individual contract. The employee must agree to the method of compensation in advance of performing the work. The contract must be made in good faith.

(2) The duties of the employee necessitate irregular hours of work. Neither the employee nor employer can either control or anticipate with any degree of certainty the number of hours the employee must work from week to week. There must be significant variations in the employee's weekly hours of work, including fluctuation in both the non-overtime and overtime ranges.

(3) The contract specifies a regular rate [*9] of pay. The contract must specify a regular rate of pay which is greater than the minimum wage for hours up to 40, and the employer must compensate at 1 1/2 times the regular rate for hours over 40. The regular rate includes all remuneration for employment.

(4) The contract provides a weekly pay guarantee. The contract must provide a weekly pay guarantee for not more than sixty hours. A guarantee of monthly, semimonthly, or biweekly pay (which would allow averaging wages) does not qualify.

Case: 1:15-cv-07009 Document #: 37-11 Filed: 06/17/16 Page 7 of 12 PageID #:376

Page 6 of 11
1997 U.S. Dist. LEXIS 1336, *9

See 29 U.S.C. § 207(f); 29 C.F.R. §§ 778.403 - 778.408 (1996); Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1347-48 (10th Cir. 1986) (setting forth elements of Belo contract); Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993) (stating that **HN4** employers must prove exemptions to the FLSA overtime requirement by "clear and convincing evidence"); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 4 L. Ed. 2d 393, 80 S. Ct. 453 (1960) (noting the strong presumption that employees are not exempt).

The defendants admit there is no valid Belo contract as to Anderson. Anderson's regular rate of pay included wages and incentive compensation. However, the alleged [*10] Belo contract only provided an increase in regular wages for overtime work, not an increase in incentive compensation.

The parties dispute the validity of Hall's Belo contract. The defendants contend that a Belo contract existed and cite the following evidence in support of each element:

(1) Bona fide individual contract. The contract was discussed with Hall at her semi-annual review in June 1995 and written on the back of her employment application.

(2) Irregular work hours. Hall's hours were dictated by how many animals were bought in on a particular day for treatment by the veterinarian; during the contract, they ranged from 35 to 45 hours. Over the period of the contract, Hall averaged 39.28 hours per week of work. More than 20 percent of Hall's work weeks had less than 40 hours.

(3) Regular rate of pay. Hall's regular rate would be $ 7.00 per hour; the contract compensated Hall's overtime work at 1 1/2 times the $ 7.00.

(4) Weekly guarantee. Hall's guarantee was for 44 hours per week. Hall's actual compensation was calculated by multiplying 40 hours times $ 7.00 and adding 4 hours times $ 10.50 to obtain a weekly rate; this was multiplied by [*11] 52 and rounded up to $ 17,000 to obtain an annual rate; this was then divided by 26 to determine biweekly pay.

In support of their claim that no Belo contract existed, the plaintiffs point to the following evidence:

(1) Bona fide individual contract. There is no relevant document signed by Hall that indicates her consent to the Belo contract. The employee policy manual states that any overtime must be approved by Coleman prior to the time it is performed and that approved overtime will be paid at 1 1/2 times the regular rate. Coleman testified that she adheres to the manual's provisions, yet she points to two unsigned documents that she asserts supersede the manual's rule. At her second deposition, Coleman stated that Hall's Belo contract was a one-page document that stated Hall would be paid $ 7.25 an hour. However, after so testifying, Coleman submitted an errata sheet altering her testimony on this critical point to state the Belo contract appears on the flip side of Hall's original job application. This shows Hall's salary remaining at $ 7.00 an hour rather than $ 7.25. Thus, the very identity of the Belo contract is mired in confusion and ambiguity. Additionally, the [*12] terms and conditions of the parties' agreement are uncertain. The parties agree that Hall was scheduled to work 46 hours weekly. The back of Hall's job application, however, indicates she will work 44 hours a week. Even more unclear is the fact that the back of Hall's job application indicates she will receive $ 653.85 per check, presumably every two weeks. This check is to include eight hours at the "O.T. rate," but Hall worked 12 hours overtime over a two-week period. Given this confusion, the defendants cannot establish by clear and convincing evidence that the parties negotiated a bona fide contract.

(2) Irregular work hours. Hall worked a pre-determined schedule. The clinic operates according to conventional hours, 7:30 a.m. to 5:30 p.m., Monday through Friday. Office hours extended until 6:30 p.m. on Tuesday evenings during the second half of 1995. Except for weeks punctuated by vacation or holidays, these were Hall's hours until the end of 1995. In 1996, Hall only worked until 5:30 p.m. on Tuesdays because the clinic no longer stayed open until 6:30 p.m. Coleman testified repeatedly that Hall abided by this fixed schedule between June 1995 and April 1996. Additionally, [*13] Hall's duties did not necessitate irregular hours of work. Unlike the occupations cited in the federal regulations on this subject, Hall's job was routine. At her deposition, Hall also testified that Coleman would send her home early during the second week of a pay period if Coleman found Hall's hours to be getting "over the 84 mark." Hall Dep. at 9; see also id. at 19.

(3) Regular rate of pay. Coleman has pointed to two different documents, each one of which specifies a different regular rate of pay. Neither document specifies an overtime rate of pay. Instead, the back of Hall's job

application states simply that she will receive 8 hours of pay biweekly at the "O.T. rate." This contract fails to qualify for the exemption, because the parties did not specify in dollars and cents the exact amount of the overtime rate or how the rate would be computed.

(4) <u>Weekly guarantee</u>. The back of Hall's job application does not provide a weekly pay guarantee. The alleged contract calls for a biweekly payment of $ 653.85, which is intended to cover an average of 44 hours a week.

At the summary judgment stage, I must look at the evidence in the light most favorable to the defendants. [*14] In support of their contention that Hall's work hours were irregular, the defendants assert that Hall's hours were dictated by how many animals were bought in on a particular day for treatment by the veterinarian. The defendants point to no evidence in the record in support of this assertion. To the contrary, there is substantial evidence that Hall's hours were not so dictated. The defendants admit that, when Hall was not holding animals, she provided general clinic assistance. See Reply to Pls. at 3. Coleman stated that Hall's schedule was "to work approximately 7:30 a.m. to 5:30 p.m. Monday through Friday." Coleman Dep. II at 8 (Sept. 25, 1996). On its face, it is apparent that such a regular work schedule cannot meet the legal requirements that (a) the law requires that the employee's duties *necessitate* irregular work hours and (b) neither the employee nor employer can either control or anticipate with *any* degree of certainty the number of hours the employee must work from week to week. See discussion *supra*.

The defendants also assert that Hall's hours were irregular in that, during the period of the alleged Belo contract, they ranged from 35 to 45 hours. During [*15] the entire period of Hall's employment, the defendants claim that she averaged 39.28 hours per week of work and that more than 20 percent of her work weeks had less than 40 hours. However, even a cursory review of the defendants' exhibit showing Hall's alleged hours worked indicates that, in those few pay periods where Hall did work less than an average of forty hours a week, she did not work much less than that time. It is apparent there is not a *significant* variation in the employee's weekly hours of work, including fluctuation in *both* the non-overtime and overtime ranges, as the law requires.

As the defendants fail to meet one element of the four elements required for a valid Belo contract, I will not review the evidence as to the other elements. Accordingly, I find there is no valid Belo contract with respect to either Anderson or Hall.

## C. FLUCTUATING WORKWEEK LIMITATION

At the hearing on this motion, the defendants conceded this does not qualify as a separate excuse to prohibit application of the FLSA overtime requirements. As the defendants offer no other claims that would entitle them to exemption from the FLSA's overtime compensation requirements, I find they [*16] are not exempt with respect to the plaintiffs.

Given the defendants' admission as to the lack of a fluctuating workweek, the parties may not use the formula set forth in <u>Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir. 1988)</u> as a basis for calculating damages. In *Blackmon*, the salary agreement explicitly noted that the plaintiffs were to be paid a fixed weekly salary regardless of the number of hours required to get the job done. See <u>id. at 1137</u>. That is clearly not the case here; the defendants have claimed the base "salary" for both plaintiffs during the period of the invalid Belo contract was for a certain number of hours of base time at a certain rate and a certain number of hours of overtime at one-and-a-half times that rate. Moreover, the *Blackmon* formula explicitly refers to "fluctuating workweeks," which the defendants admit does not exist here.

## D. PLAINTIFFS' RECOVERY OF DAMAGES, ATTORNEYS' FEES, AND COSTS

### 1. Compensatory damages

a. *Amount of payment*

As the defendants have failed to establish a valid exemption to the FLSA's overtime pay requirements, they are required by law to reimburse the plaintiffs for any unpaid overtime hours. [*17] See <u>29 U.S.C. § 216(b)</u>. The amount of payment is disputed in that the parties disagree as to the number of hours actually worked each week by both plaintiffs and the amount of incentive due Anderson each week. As the plaintiffs request, these questions of fact will be determined at the trial of this matter.

b. *Evidence of hours worked*

In the memorandum in support of their motion for partial summary judgment, the plaintiffs allude to the questions

Case: 1:15-cv-07009 Document #: 37-11 Filed: 06/17/16 Page 9 of 12 PageID #:378

Page 8 of 11
1997 U.S. Dist. LEXIS 1336, *17

of whether they should be allowed to make good faith estimations of the exact hours they worked, see Pls.' Mem. Supp. Sec. Mot. for Partial Summ. J. at 23, and whether the defendants should be allowed to rely on Coleman's manually written payroll ledger, see id. at 25. Coleman testified that she has thrown away the employees' time cards for the years prior to 1996, see Coleman Dep. at 36 (Sept. 25, 1996), and that the only record she has of hours worked in that time period is a payroll ledger showing biweekly hours upon which payroll checks were issued, see id. at 40. The plaintiffs point to discrepancies between the payroll ledger and their actual hours worked, including discrepancies for a handful of payroll periods [*18] where time cards are available, see id. at 47.

A number of cases indicate that, **HN5** where the employer fails to keep records that accurately reflect all daily and weekly hours worked, the employee may come forth with evidence to show hours worked as a matter of "just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 90 L. Ed. 1515, 66 S. Ct. 1187 (1945); see also, e.g., Wirtz v. Evans Janitor Service, Inc., 238 F. Supp. 752, 754 (D.C.S.C. 1965); Martin v. Deiriggi, 985 F.2d 129 (4th Cir. 1992); Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986). Accordingly, I will allow both parties to make good faith estimations of the hours worked by the plaintiffs and to support that evidence with testimony concerning their schedules, vacations, sick leave, etc.

c. *Method of calculation*

In addition to the question of *what* hours and incentive amounts should be used as the basis of the damages calculations, it is apparent from the exhibits attached to each party's memorandum that the parties also disagree as to *how* the plaintiffs' overtime should be calculated. The parties disagree as to how Anderson's overtime should be calculated to [*19] include her incentive pay, both before and during the period of the invalid Belo contract. The parties disagree as to how Hall's overtime should be calculated during the period of the invalid Belo contract. The question of interpreting the statutes, regulations, and case law to arrive at appropriate methods of calculation has not been fully briefed by the parties. As noted above, the parties may not use the *Blackmon* formula in their calculations of damages for unpaid overtime during the period of the invalid Belo contract. It would be inappropriate for the Court to further address these issues without input from the parties. In addition, the defendants have not provided information as to the amount of incentive pay they contend Anderson received during the period of the alleged Belo contract.

d. *Offset*

It is apparent from the defendants' memorandum and exhibits that they seek to offset errors which resulted in underpayments with errors which resulted in overpayments. See Reply to Pls. at 8. The defendants cite no precedent in support of this proposition. To the contrary, **HN6** it is a longstanding rule under the FLSA that such offsets cannot be made. See, e.g., Black v. Roland [*20] Elec. Co., 163 F.2d 417 (4th Cir. 1947) (affirming rule that employer could not claim payment in excess of requirements in one week as a credit against payment in other weeks which did not equal statutory requirements); see also Usery v. Godwin Hardware, Inc., 426 F. Supp. 1243 (D.C. Mich. 1976) (holding that payments to employees, such as profit-sharing payments, do not qualify as extra compensation creditable toward overtime compensation payable under FLSA).

**2. Liquidated damages**

Section 216(b) of the FLSA states,

> **HN7** Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). **HN8** The employee's right to recover liquidated damages was modified in the Portal-to-Portal Act. See id. at § 260. This provided that the right to recover all or a portion of liquidated damages is within the district court's discretion if the employer proves both of the following elements to the satisfaction of the Court:

(1) The [*21] "act or omission giving rise to such action was in good faith", see id. This is a subjective test. See Sullivan v. City of Phoenix, 845 F. Supp. 698, 705 (D. Ariz. 1993). The court should consider whether the employer "innocently believed" its action was not a FLSA violation. Burnley v. Short, 730 F.2d 136, 140 (1984).

(2) The employer "had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.

See 29 U.S.C. § 260. This is the "objective prong" of the test. Burnley, 730 F.2d at 140. "Other cases have made it clear that an employer may not simply remain blissfully ignorant of FLSA requirements." Id. "Once the Department of Labor expresses an opinion on the legitimacy of an issue, an employer can no longer act to the contrary in good faith." Sullivan, 845 F. Supp. at 705.

There is a strong presumption in favor of doubling; the burden is on the employer to prove that single damages should be awarded. See Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986).

In support of their claim that liquidated damages should not be awarded, the defendants make the following points:

(1) Interstate [*22] commerce ties. The clinic has only tenuous connection with interstate commerce. The clinic does not meet the minimum $ 500,000 in revenue to be considered an "enterprise," which automatically comes under the purview of the Act. The only connection the clinic had with interstate commerce was the employees' opening of supplies from out of state.

(2) Overtime actually paid. Notwithstanding the FLSA's tenuous coverage, the employer paid the employees 1 1/2 times the regular rate (although this did not include Anderson's incentive pay, in violation of the Act). Under Blackmon v. Brookshire Grocery Company, 835 F.2d 1135 (5th Cir. 1988), the employer would receive no credit for payment of the overtime premium, resulting in an underpayment to Anderson of $ 144.35. Yet, the employer's good faith is demonstrated by the fact that Anderson was paid $ 403.10 more under the contract than she would have received if paid hourly. At her deposition, Coleman stated that she paid her employees at the overtime rate whenever their hours were greater than 40 in a week. See Coleman Dep. I at 8; Coleman Dep. II at 6, 11.

The plaintiffs claim the following:

(1) Interstate commerce [*23] ties. The defendants have stipulated that the plaintiffs were nonexempt employees covered by the FLSA's overtime provisions at all times of their employment. There is no minimum revenue requirement, because the clinic holds itself out as a hospital. See 29 U.S.C. § 203(r)(2); Defendants' employee policy manual at 3 ("We are a hospital."). The clinic's employee policy manual indicates that it follows federal law.

(2) Lack of good faith. The defendants cannot prove they acted in good faith. Employees approached the Department of Labor in 1995 because the clinic was computing overtime on an 80-hour biweekly basis and paying straight wages on the first four hours of overtime. Within months after the employees relayed to Coleman the labor board's opinion that these practices violated the FLSA, Coleman placed them on a fixed salary with long hours (10 hours/day for Hall and 9 1/2 for Anderson). At no point did Coleman make these employees whole for the wrongfully withheld compensation. Instead of reconstructing their overtime hours on the basis of time cards and check stubs, Coleman threw the time cards and check stubs away. Nowhere is Coleman's lack of good faith more evident [*24] than in her persistent assertions she always paid overtime on a weekly basis for all hours over 40. The clinic's own payroll ledger impeaches her. Testimony from her sitting office manager impeaches her. With this track record, Coleman should not be excused from paying liquidated damages. See Troutt v. Stavola Bros., Inc., 905 F. Supp. 295, 302-03 (M.D.N.C. 1995); Burgess v. Catawba County, 805 F. Supp. 341, 350 (W.D.N.C. 1992).

(3) Lack of reasonable grounds for FLSA violations. The defendants say they had reasonable, but unspecified, grounds for their multiple FLSA violations. They imply they simply misunderstood the rules, but this is never a defense to a liquidated damages claim. See Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1351 (10th Cir. 1986).

It should be initially noted that the exemption for enterprises which the defendants point to was repealed in 1989. See 29 U.S.C. § 213(a)(2), repealed by Pub. L. 101-157, § 3(c)(1), 103 Stat. 939 (1989). The exception to the former enterprise requirement for hospitals that the plaintiffs cite in rebuttal, see 29 U.S.C. § 203(r)(2), applies to hospitals for people, not animals.

I find [*25] the evidence creates at least a question of fact as to whether the defendants acted in good faith, thus I must deny plaintiff's motion in this regard.

a. After June 1995

The defendants attempted to satisfy the Department of Labor complaints by establishing Belo contracts for both Anderson and Hall. Although the contracts may be legally invalid, the defendants attempted to satisfy the FLSA by providing a recognized exemption to the Act's

wage and hour requirements. This creates a question of fact as to the defendants' good faith. The Belo contracts are not so patently illegal as to support a conclusion as a matter of law that a reasonable person could determine it was bad faith on the defendants' part to rely on them.

b. Before June 1995

Given the factual and legal disputes as to the overtime payments, I do not know how much in unpaid wages is involved prior to the creation of the Belo contracts. If the plaintiffs, however, were paid overtime and it was misfigured because the defendants were using an eighty-hour, two-week period rather than a forty-hour, one-week period, there is a question of fact as to the defendants' good faith. This is particularly true given the evidence [*26] the defendants intended to properly compensate the employees and given that the defendants may have had good faith beliefs the plaintiffs were exempt and were actually overpaid.

3. Attorneys' fees

HN9 Section 216(b) of the FLSA entitles a prevailing plaintiff to receive a "reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). In this case, the defendants have admitted liability for Anderson's unpaid overtime work. I have held that the defendants are also liable for Hall's unpaid overtime work. Thus, the plaintiffs will be entitled to reimbursement of attorneys' fees and costs.

HN10 In Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), the court set forth the facts and circumstances to be considered in determining the amount of reasonable attorneys' fees. These include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the [*27] client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fee awards in similar cases.

See id. at 226 n.28; see also Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc., 881 F. Supp. 1021 (E.D. Va. 1994).

The outcome of the trial in this action will affect many of the Barber factors. In addition, the plaintiffs have yet to submit statements of their fees and expenses. It is appropriate to defer a decision as to the amount of fees until the trial of this matter.

Section 216(b)'s fee award applies to violations of sections 206 or 207 of the Act. As I indicated on the record at the hearing of this matter, the plaintiff's will need to segregate their billings between their non-FLSA related claims and their FLSA claims.

III. CONCLUSION

Based on the foregoing reasons, the plaintiffs' motion for partial summary judgment is GRANTED as to the defendants' liability for unpaid [*28] overtime compensation and attorneys' fees and DENIED as to the defendants' liability for liquidated damages. The availability of liquidated damages and the amounts of compensatory damages, attorneys' fees, and liquidated damages (if awarded) payable to the plaintiffs will be determined at the trial of this matter.

An appropriate order shall issue.

Jackson L. Kiser

Chief United States District Judge

ORDER

By: Jackson L. Kiser

Chief United States District Judge

The second motion of Plaintiffs Hall and Anderson for partial summary judgment came before the Court for hearing on December 3, 1996. In accordance with the memorandum opinion filed concurrently with this order, the plaintiffs' motion for partial summary judgment is GRANTED as to the defendants' liability for unpaid overtime compensation and attorneys' fees and DENIED as to the defendants' liability for liquidated damages. The availability of liquidated damages and the amounts of compensatory damages, attorneys' fees, and liquidated damages (if awarded) payable to the plaintiffs will be determined at the trial of this matter.

Hannah Florman

1997 U.S. Dist. LEXIS 1336, *28

The clerk is directed to send a certified copy of this order to all counsel of record.

ENTERED [*29] this 17th day of January, 1997.

Jackson L. Kiser

Chief United States District Judge

Hannah Florman