IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN SCHWENINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 07009 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| ADVANCED VISION TECHNOLOGY, ) | |
| INC. A/K/A AVT, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Martin Schweninger filed suit against his former employer, Advanced Vision Technology, Inc. (AVT), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA).[1] Cross motions for summary judgment are pending, and the parties agree that the case can be resolved on the issue of whether there is a valid Belo contract under 29 U.S.C. § 207(f). If a Belo contract exists, there can be no violation of the FLSA. For the reasons stated below, AVT's motion is granted and Schweninger's motion is denied.

## BACKGROUND[2]

AVT is a business that deals in printing technology. Schweninger worked for AVT as a

---

[1] The court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331. Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391.

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements, (dkts. 50, 57, 60), and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Field Service Engineer (FSE) from 2007—the time AVT acquired his previous employer, GMI—until he resigned in September 2014. As an FSE, Schweninger worked on a variety of AVT's product lines, and his job duties covered a wide range of activities. These duties included: installing, maintaining, and repairing AVT systems, which sometimes entailed extensive travel by car or plane to reach customer locations; consulting with customers, training customers' employees to use the machines, troubleshooting problems and providing remote support; and completing routine paperwork, ordering parts, promoting sales, and attending trainings. When Schweninger had to travel to customer locations for installation or repair work, his trips would be scheduled in advance. The duration of these trips could vary for any number of reasons, including variations in travel time, delays in receiving parts, the type of product being installed or repaired, the customer's employee-training needs, or a repair or maintenance issue that was not known to him before he arrived onsite. Schweninger was also regularly scheduled to be "on call," during which times he would be responsible for addressing customer emergencies either by phone or through in-person visits. Issues that would come up when he was on call were "usually just kind of one off little issues," (dkt. 37-5, Ex. 4 at 50:21–22), and "each troubleshooting call was its own entity . . . . [that] could take a few minutes or an hour." (*Id.* at 53:16–18.)

In approximately 2005, GMI switched all the FSEs from salary to hourly pay. As part of that switch, GMI guaranteed FSEs would be paid for a minimum of 40 hours per week, even when they worked fewer than 40 hours. AVT maintained this pay structure when it acquired GMI in 2007. In January 2009, however, AVT ran into financial difficulties due to the financial downturn and began considering modifying the way it paid FSEs. First, it tried to maintain the same pay structure but with reduced hourly wages. When that did not alleviate the financial strain, AVT tried to limit FSEs' overtime, but that caused customer service to suffer. After

2

further consideration, AVT came up with three possible solutions: (1) keeping the same pay structure but further lowering hourly wages; (2) abolishing the guaranteed minimum weekly pay and only paying employees for hours worked; or (3) adopting what is known as a Belo contract, under which the company would lower hourly wages but also guarantee a minimum weekly pay equivalent to 40 hours at a regular hourly wage and an additional 10 hours at an overtime wage equal to one and a half times the regular wage.[3] AVT, wanting to stabilize its labor costs while still providing FSEs with a steady, predictable income, opted to adopt the Belo contract.

AVT informed the FSEs of this change in a letter dated December 10, 2009. The letter explained AVT's reasoning for the change and laid out the terms of the new pay structure, including the employee's new hourly wage, overtime wage, and minimum weekly pay. It further stated that acceptance of those terms was a condition of continued employment. AVT asked each employee to sign their letter and return it prior to the new pay structure taking effect on January 1, 2010. Schweninger signed his letter and returned it. Schweninger continued to work for AVT and to be compensated in accordance with the terms laid out in the December 2009 letter, until he voluntarily resigned in September 2014.

On August 11, 2015, Schweninger filed suit against AVT, alleging that AVT violated the FLSA's overtime provision, 29 U.S.C. § 201(a), because the new pay structure was not a valid Belo contract under 29 U.S.C. § 207(f) because it did not meet two of the four requirements under that exception (count I). Schweninger additionally alleged that AVT's violation was willful, thus extending the applicable statute of limitations for recovery of unpaid overtime to three years, pursuant to 29 U.S.C. § 255(a) (count II), and that he, on behalf of himself and a

---

[3] This type of contract is named for the Supreme Court case that first approved of such contractual arrangements, prior to their codification in 29 U.S.C. § 207(f), as an exemption from the FLSA's overtime requirements. *See Walling* v. *A.H. Belo Corp.*, 316 U.S. 624, 62 S. Ct. 1223, 86 L. Ed. 1716 (1942).

similarly situated class of plaintiffs, was entitled to liquidated damages under 29 U.S.C. § 260 (count III). After the completion of discovery, AVT filed for summary judgment that the new pay structure was a valid Belo contract. Schweninger filed a cross-motion for summary judgment on the same issue.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). Because the parties agree that a single issue resolves the case, the court views the facts in a light favorable to Schweninger. *See Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). It is unnecessary to treat the motions separately.

AVT bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, Schweninger cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

**I.    Requirements of a "Belo" Contract**

Section 207 of the FLSA addresses the maximum time an employer can require an employee to work during any given week without being entitled to compensation in excess of the normal hourly rate, i.e., overtime pay. *See generally*, 29 U.S.C. § 207(a). Subsection (f) of this section, however, makes an exception for "[e]mployment necessitating irregular hours of work." *See* 29 U.S.C. § 207(f). In order to qualify for this exception, four requirements have to be met: (1) the employee is employed pursuant to a bona fide individual contract; (2) the employee's duties necessitate irregular work hours; (3) the contract specifies a regular rate of pay and compensation of not less than one-and-a-half times that rate for hours in excess of a maximum workweek (40 hours); and (4) the contract contains a weekly pay guarantee, based on the specified rates, for not more than 60 hours of work. *Id.*[4] "[A]n employer who invokes the Belo exception has the burden of showing affirmatively that each of the essential conditions to the exception are met." *Donovan* v. *Brown Equip. & Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir. 1982); *see also Acton* v. *City of Columbia*, 436 F.3d 969, 976 (8th Cir. 2006); *Johnson* v. *City of Columbia, S.C.*, 949 F.2d 127, 129–30 (4th Cir. 1991).

The parties do not dispute that their employment contract specified a regular rate of pay and an overtime rate of one-and-a-half times the regular rate and that it included a weekly pay guarantee. (Dkt. 50 ¶ 8.) Thus, the only questions are whether the contract constituted a bona fide individual agreement and whether Schweninger's employment duties necessitated irregular work hours. In interpreting the terms "bona fide individual contract" and "necessitate irregular hours of work," the court will consider the Interpretive Bulletins of the Department of Labor. *See* 29

---

[4] This section codifies the Supreme Court's holding in *Belo*.

C.F.R. §§ 778.403-778.408.[5]

   A. *Bona Fide* Individual Contract

A *bona fide* individual contract has two basic requirements. *See, e.g.*, *Boll* v. *Federal Reserve Bank*, 365 F. Supp. 637, 644 (E.D. Mo. 1973); *Anderson* v. *North Roanoke Veterinary Clinic*, No. 96 C 0250 R, 1997 U.S. Dist. LEXIS 1336, *8 (W.D. Va. Jan. 17, 1997). First, "[t]he employee must not only be aware of but must have agreed to the method of compensation in advance of performing the work." 29 C.F.R. § 778.407. While such an agreement does not necessarily need to be a written contract, the terms of the agreement must be known to both sides so that it is not just "a onesided affair determinable only by examination of the employer's books." *Id.* Second, the making of the contract and the settlement of its terms must be done in good faith. *Id.*

Schweninger does not dispute that he was aware of the terms of the contract and had indicated his agreement by signing and returning the letter he received before he performed any work under its terms. (*See* Dkt. 50 ¶¶ 5–11.) Instead, Schweninger argues that AVT did not offer the contract in good faith. (*See* Dkt. 48 at 4–8.)

Black's Law Dictionary defines "good faith," in pertinent part, as "[a] state of mind consisting in (1) honesty in belief or purpose, . . . or (4) absence of intent to defraud or to seek unconscionable advantage." BLACK'S LAW DICTIONARY 762 (Brian Garner ed., 9th ed. 2009). As evidence of its good faith AVT submitted the letter it sent to employees outlining its reasons for

---

[5] After review, the court considers the Bulletins to be reasonable interpretations of the FLSA to which the court may properly refer for guidance. *See Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

adopting and the terms of the Belo contract. Deposition testimony given by Chris Courcy, AVT's Human Resources Manager, further discussed those clear business reasons.[6] Schweninger, in response, points to no evidence in the record to dispute this account. Instead, Schweninger argues that AVT did not act in good faith because (1) he did not like the terms of the Belo contract and would have preferred "to either stay with the compensation program [he] had been on previously or, return to [an] hourly pay scale" (dkt. 47-4, Ex. D ¶ 5); and (2) agreeing to the Belo contract was a condition of continued employment with AVT (dkt. 50 ¶ 10).

To the extent that Schweninger argues that his dislike of the Belo contract's terms establishes AVT's bad faith, his argument lacks logical coherence. It is akin to a child claiming his parents are trying to starve him because they are feeding him chicken and vegetables for dinner rather than the pizza he wanted. Schweninger's dislike of the offer has no bearing on the intent with which it was tendered.[7]

Schweninger's argument that AVT acted in bad faith by offering the Belo contract on a "take-it or leave-it" basis is likewise unavailing. Schweninger does not dispute that he was an at-will employee, meaning as a matter of law AVT had the right to unilaterally modify the terms of his employment, including compensation terms, and make agreement to that modification a condition of continued employment. *See Leong* v. *SAP Am., Inc.*, 67 F. Supp. 3d 972, 986 (N.D. Ill. 2014) (citing *Geary* v. *Telular Corp.*, 793 N.E.2d 128, 131, 341 Ill. App. 3d 694, 275 Ill.

---

[6] AVT summarizes the pertinent information in its Rule 56.1 Statement of Uncontested Material Facts in Opposition to Schweninger's combined cross-motion for summary judgment and opposition to AVT's motion for summary judgment. (Dkt. 60.) Schweninger has not contested any of these facts; therefore, they are deemed admitted. L.R.56.1(a).

[7] Schweninger similarly argues that AVT could not have had its stated intent of providing a steady, predictable income to its employees, because Schweninger felt his income was steady enough, and in any case he did not care if he occasionally had a "short" week pay-wise. (Dkt. 48 at 7; Dkt. 47-4, Ex. D. ¶¶ 5-7.) This argument fails for the same reason Schweninger's dislike of the contract's terms did, because his feelings about the contract do not retroactively negate the intent with which it was initially offered.

Dec. 648 (Ill. App. Ct. 2003); *Wyatt* v. *Dishong*, 469 N.E.2d 608, 611, 127 Ill. App. 3d 716, 83 Ill. Dec. 1 (Ill. App. Ct. 1984)) ("Generally, an at will employment agreement 'can be modified by an employer as a condition of its continuance. . . . The right to unilaterally modify at-will employment terms includes the right to modify compensation terms."). He cites a single case, *Lewis* v. *Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), to support the proposition that the "take-it or leave-it" nature of the contract indicated bad faith. But as AVT correctly points out the violation (of the National Labor Relations Act) at issue in that case was not based on the "take-it or leave-it" aspect of the employment agreement but, rather, on the impermissible curtailing of the employee's collective bargaining rights. *Id.* at 1151. In fact, the Seventh Circuit noted that the contract would have been acceptable had it allowed for collective action even if acceptance of the contract had been a condition of continued employment. *Id.* at 1158.

AVT has pointed to evidence in the record evincing its good faith in offering the Belo contract to its employees, and Schweninger has not offered any evidence to rebut it. Thus, the court finds that no reasonable jury could find from the evidence in the record that AVT did not act in good faith. As a result, the court finds that there was a *bona fide* individual agreement between AVT and Schweninger.

B.  Employment Duties Necessitate Irregular Hours

In determining whether an employee's job duties necessitate irregular hours, courts consider both (1) the *necessity* of irregular hours in the employee's work and (2) the *irregularity* of those hours. *See* 29 C.F.R. § 778.405; *see also, e.g.*, *Adams* v. *City of Manchester*, No. 11 C 1309, 2012 WL 3242078, *5 (E.D. Mo. Aug. 7, 2012).

The Belo exception found in section 207(f) "is not designed to apply to a situation where the hours of work vary from week to week at the discretion of the employer or the employee." 29

C.F.R. § 778.405. Rather, "[t]he nature of the employee's duties must be such that neither he nor his employer can either control or anticipate with any degree of certainty the number of hours he must work from week to week," and those duties "must necessitate significant variations in weekly hours of work both below and above" 40 hours. *Id.* Section 207(f) "is designed to cover a situation where, because of the inherent nature of the job, an employee's work hours are 'irregular,' fluctuating between overtime weeks and short weeks . . . beyond the employer's control." *Donovan* v. *Welex, Div. of Halliburton Corp.*, 550 F. Supp. 855, 858 (S.D. Tex. 1982).

AVT has pointed to evidence in the record showing that Schweninger's job duties varied widely, both in their content and in the amount of time it would take to complete them. (*See* Dkt. 50 ¶¶ 14–41.) This evidence is derived, at least in part, from Schweninger's own deposition testimony describing his job duties. (*Id.* ¶¶ 18, 20–24, 26, 29–34, 36–37, 40.) While AVT acknowledges that it scheduled Schweninger's customer service visits (*id.* ¶ 17), many of the variables that determined how long the onsite work would take were not within its control. These variables included travel time (*id.* ¶ 18–21), the type of product being installed or serviced (*id.* ¶ 22), and the number and complexity of repairs or maintenance that was needed (*id.* ¶ 29–32). Additionally, when Schweninger was scheduled to be "on call," he would only work as many hours as necessary to respond to unplanned and unpredictable customer service calls. (*Id.* ¶ 33–38.)

Schweninger chooses not to answer this evidence directly. Rather, he argues that AVT has not met its burden of proof because it does not provide "any specific reference to or identification of any work week in which [Schweninger's job] duties necessitated irregular hours of work which could not be controlled or reasonably anticipated by AVT." (*See, e.g.*, *id.* ¶ 16.) Schweninger does not offer legal support for this decidedly high standard, and the court finds no

support for it in section 207(f) or in the Department of Labor's Interpretive Bulletins, which speak instead of "[t]he *nature* of the employee's duties" and disfavor hours that are irregular at the employer or employee's discretion. 29 C.F.R. § 778.405.

Moreover, in addition to the evidence in the record, AVT also points to a case that, while not binding, is persuasive. In *Boll* v. *Federal Reserve Bank of St. Louis*, 365 F. Supp. 637 (E.D. Mo. 1973), the plaintiff, an assistant bank examiner, argued that his employer had discretion over his work hours because it set the schedule several months in advance for which banks he would assist in examining. *Id.* at 645. The court rejected that argument, pointing to the fact that, once the bank examiners were on site, the employer could not control how many hours it took for them to complete the examination or anticipate those hours with any degree of certainty. *Id.* Here, AVT has pointed to evidence that, once Schweninger was sent out on a customer-service visit, it too could not control how many hours that visit would take nor, due to the number of variables in play, predict ahead of time with any degree of certainty how many hours Schweninger would work. Schweninger has not offered any evidence in rebuttal. As such, no reasonable jury could find that Schweninger's job duties did not necessitate irregular hours of work.

"For hours to be considered irregular within the meaning of [section 207(f)], they must, in a significant number of weeks, fluctuate both below forty hours per week as well as above, and the fluctuations below forty must result from work requirements, not vacations, holidays, illness or reasons personal to the employee." *Brown Equip.*, 666 F.2d at 154; *see also* 29 C.F.R. § 778.406. "Significant number of weeks" is not well-defined, but it is clear from the case law that it does not require fluctuation below 40 hours a week in a majority of weeks. *See, e.g.*, *Walling v. Halliburton Oil Well Cementing Co.*, 331 U.S. 17, 21 n.8, 67 S. Ct. 1056, 91 L. Ed.

10

1312 (1947) (upholding a Belo contract where employees worked fewer than forty hours per week in only 13% of workweeks).

AVT attached to its motion a chart showing the number of hours for which Schweninger was paid[8] for the period during which he could potentially recover under the FLSA's two-year statute of limitations.[9] (*See* Dkt. 56-1, Ex. 11 at 5–8; *see also* 29 U.S.C. § 255(a) (stating that the standard statute of limitations to bring suit under the FLSA is two years).) Schweninger does not dispute the accuracy of the information.[10] Instead, he argues that AVT has not done sufficient analysis to show that there was significant fluctuation in a significant number of workweeks. (Dkt. 62 at 4–5.) Because AVT has put into the record all the raw data it used for its analysis, the court will look to that data to determine whether any reasonable jury could conclude from it that AVT has failed to make the requisite showing.

In the 109 weeks between August 12, 2012 and September 7, 2014, the number of weekly hours for which Schweninger was paid ranged from a low of 2.3 hours to a high of 68 hours. Schweninger was paid for fewer than 40 hours in 26 of the 109 weeks (23.9%), and 40 hours or more in the other 83 weeks (76.1%). The weekly hours for which Schweninger was paid can be further broken down as follows: (1) three weeks at less than 10 hours (2.75%); (2) three weeks between 10 and 20 hours (2.75%); (3) seven weeks between 20 and 30 hours (6.4%); (4) 13

---

[8] The chart was supported by an affidavit by Chris Courcy. In addition to the hours Schweninger actually worked, AVT has included in its data set all the hours for which Schweninger was paid, including vacations, holidays, and sick days.

[9] Schweninger argues that AVT should have produced evidence regarding the hours he worked prior to AVT's switch to the Belo contract. He cites no case law to support this argument, and the court sees no reason to institute such a requirement.

[10] AVT provided analysis of this data as well, but, for reasons the court cannot discern, based its analysis on 99 weeks' worth of data. The court counts 109 weeks in the data set provided and, because it cannot be sure which weeks AVT excluded, will base its decision on what the 109 weeks show.

11

weeks between 30 and 40 hours (not including weeks of exactly 40 hours) (11.9%); (5) 48 weeks between 40 and 50 hours (44%); (6) 29 weeks between 50 and 60 hours (26.6%); and (7) six weeks at over 60 hours (5.5%). Additionally, the court agrees with Judge Guzman's observation that "[t]here is a difference between the number of times an individual's work hours fall below forty hours and the range of variation in the actual number of hours worked." *Massa* v. *Advanced Vision Technology*, No. 13 C 1169, slip op. at 6 (N.D. Ill. Feb. 13, 2014). The court therefore looks to how many weeks Schweninger's pay reflects hours outside the range of 35–45 hours to determine whether the fluctuation above and below 40 hours a week was significant. Schweninger was paid for 35 or fewer hours in 19 weeks (17.4%) and 45 or more hours in 54 weeks (49.5%). Because the Supreme Court has previously found a valid Belo contract where workers worked fewer than 40 hours in 13% of workweeks, *see Halliburton Oil*, 331 U.S. 17, the court finds that AVT has provided sufficient unrebutted evidence that Schweninger's hours fluctuated significantly in a significant number of weeks. Although it is likely that Schweninger would have been paid more had he not been working under a Belo contract, his employer's action is consistent with the FLSA.

Thus, the court finds that Schweninger's job duties necessitated irregular hours as required by 29 U.S.C. § 207(f). AVT has satisfied the final two elements for establishing that a valid Belo contract exists, and it is entitled to summary judgment.

## II. Willful Violation of the FLSA and Liquidated Damages

Because the court finds that a valid Belo contract under section 207(f) existed, AVT has not violated the FLSA, let alone willfully. Schweninger cannot be entitled to liquidated damages. Thus, AVT is entitled to summary judgment on counts II and III, and Schweninger's motion for summary judgment on those counts must be denied.

**CONCLUSION AND ORDER**

For the foregoing reasons, AVT's motion for summary judgment (dkt. 37) is granted and Schweninger's motion for summary judgment (dkt. 47) is denied. The Clerk is directed to enter judgment in favor of defendant. The case is terminated.

Date: March 31, 2017

_____
U.S. District Judge Joan H. Lefkow